IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ROGER HAGER,

          Plaintiff,

v.                                          CIVIL ACTION NO.  2:09-cv-01357

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's Motion to Remand [Docket 14]. For the reasons stated below, Plaintiff's motion is **GRANTED**.

*I. BACKGROUND*

On December 14, 2009, Plaintiff Roger Hager filed his complaint in this Court seeking a review of the Commissioner of Social Security's final decision denying his application for supplemental security income (SSI). (Docket 2.)  By Standing Order entered August 1, 2006, and filed in this case on December 14, 2009, this action was referred to United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation (PF&R). Magistrate Judge Stanley filed a PF&R (Docket 13) on January 6, 2011, recommending that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket. Objections to the PF&R in this case were due on January 24, 2011.  Although Plaintiff filed a document on January 24, 2011, entitled "Plaintiff's Objections to the Defendant's Proposed Findings and Recommendation," the substance of this document is actually a motion to remand pursuant to the

sixth sentence of 42 U.S.C. § 405(g), and the Court construes it as such. On January 28, 2011, Defendant replied in opposition of the motion. Plaintiff filed a response on February 4, 2011. The motion is now ripe for review.

## *II. APPLICABLE LAW*

The Court may remand a case to the Commissioner when additional evidence is presented, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Accordingly, the Court may remand the case if the following four prerequisites are met: (1) the evidence must be relevant to the determination of disability at the time the application was first filed and not merely cumulative; (2) the evidence must be material to the extent that the Commissioner's decision might reasonably have been different; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must present to the remanding court at least a general showing of the nature of the new evidence. *Borders v. Heckler*, 777 F.2d 954 (4th Cir. 1985), *superseded by statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 925 F.2d 769 (4th Cir. 1991), *vacated on rehearing*, 935 F.2d 93 (4th Cir. 1991) (en banc), *superseded by statute on other grounds*, 20 C.F.R. § 404.1527.[1]

---

[1] Though the *Wilkins* court indicated in a parenthetical that *Borders*' four-part test had been superseded by 42 U.S.C. § 405(g), the Fourth Circuit has continued to cite *Borders* as authority when presented with a claim for remand based on new evidence. *See Hagerman v. Barnhart*, No. 03-2355, 2004 WL 887323, at *1 (4th Cir. Apr. 27, 2004); *Miller v. Barnhart*, No. 02-2394, 2003 WL 1908920, at *4 (4th Cir. Apr. 22, 2003). This has been the standard approach in this district. *See Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D. W. Va. 1992); *see also Bolin v. Astrue*, No. 2:09-cv-00117, 2010 WL 1176560, at *18 (S.D. W. Va. Mar. 23, 2010).

### III. DISCUSSION

In his objections to the PF&R, Plaintiff references his recent receipt of "education records," which show (1) one IQ test with "valid IQ scores from 1984, with a full scale IQ of 65 when the Plaintiff [was] 9 years old" and (2) a second IQ test with "a valid IQ score with a verbal IQ of 68 in 1987, when the Plaintiff was 12 years old." (Docket 14 at 2.) Plaintiff argues that the education records, coupled with the administrative record on review, demonstrate that he suffers from mental retardation, a condition that was not presented to or considered by the ALJ. As such, Plaintiff requests that the Court remand under § 405(g) for consideration of this evidence.

*A. Relevancy*

First, the evidence must be "relevant to the determination of disability at the time the application was first filed and not merely cumulative." *Borders*, 777 F.2d at 955 (citing *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983)). In this case, the relevant time period is from Plaintiff's alleged disability onset date, June 1, 1995, to the ALJ's decision date, December 11, 2008. *See Salling v. Apfel*, No. 99-1772, 1999 WL 1032616, at *2 (4th Cir. Nov. 15, 1999). Plaintiff alleges that the evidence shows that he has suffered from mental retardation, which is considered "a lifelong condition," since childhood. *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985) (quoting 20 C.F.R. subpart P, Appendix 1 § 12.00(B)(4)). Accordingly, the educational records are relevant to the initial disability determination period. Further, the proffered evidence is clearly not cumulative or duplicative because it relates to a condition that was not presented before the ALJ.

*B. Materiality*

Second, the evidence "must be material to the extent that the Secretary's decision 'might reasonably have been different' had the new evidence been before her." *Borders*, 777 F.2d at 955 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir.1980)). As such, Plaintiff must establish that the new evidence, "when considered in conjunction with all evidence," would lead to the conclusion that he disabled as defined by the Act. *McAbee v. Halter*, No. 00-2198, 2010 WL 1251452, at *3 (4th Cir. Oct. 19, 2001) (citing 42 U.S.C. § 423(d)(5)(A)). Defendant did not brief the issue of whether the new evidence, if considered, could have affected the Secretary's decision.[2]

Plaintiff asserts that the recently acquired education records demonstrate that he suffers from mental retardation as listed in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C) ("12.05(C)"), rendering him disabled within the meaning of the Act.[3] Listing 12.05 "contains an introductory paragraph with the diagnostic description for mental retardation . . . [and] four sets of criteria (paragraphs A

---

[2] The Commissioner argues that the proffered evidence cannot be material because it did not address a condition that was presented to the ALJ. However, this argument is squarely foreclosed in this circuit, as "[a] technical application of the rules of pleading is inappropriate to the informal proceedings provided in disability determinations." *See King*, 599 F.2d at 599 (the fact that evidence of acute alcoholism was not presented or considered in social security proceedings below does not preclude the court from remanding pursuant to § 405(g) for consideration of that evidence).

[3] The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2009). The first inquiry is whether the claimant is currently engaged in substantial gainful employment. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. §§ 404.1520(d), 416.920(d). If it does, the claimant is found to be disabled and awarded benefits. This third inquiry is where Plaintiff's claim failed at the administrative level – an impairment meeting the criteria of § 12.05(C) would satisfy this element.

through D)." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A). Plaintiff is within 12.05(C) if his impairment satisfies the "diagnostic description in the introductory paragraph" of 12.05 as well as the specific criteria listed in 12.05(C). *Id.* As such, Plaintiff must demonstrate (1) "significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested . . . before age 22," (2) "[a] valid verbal, performance, or full scale IQ of 60 through 70," and (3) "a physical or other mental impairment imposing additional and significant work-related limitation or function." §§ 12.05; 12.05(C).

First, the introductory "diagnostic" paragraph of listing 12.05 requires both "subaverage general intellectual function" as well as "deficits in adaptive functioning" that manifested at an early age. Although these terms are not explicitly defined, "adaptive activities" are described elsewhere in the Listing as "[a]ctivities of daily living" such as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." § 12.00(C)(1). In support of this prong of the test, Plaintiff points the Court to his low childhood IQ scores and several incidents reported in his administrative record in support of the proposition that he has subaverage intellectual function and "difficulty dealing with ordinary everyday life." (Docket 14 at 3.) Specifically, Plaintiff argues that his record of hospitalizations, incarcerations, and suicide attempts indicate significant deficits in adaptive functioning.

The Court's evaluation of this case is complicated by Plaintiff's substance abuse, specifically alcoholism, which the ALJ determined was a material factor in Plaintiff's initial disability determination. *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(a) (precludes an award of disability benefits if alcohol or drug abuse was "a contributing factor material to the Commissioner's

5

determination that the individual is disabled"). It is unclear how many of the alleged incidents reflecting "deficits in adaptive functioning" identified in Plaintiff's motion simply reflect his periods of decomposition from alcohol abuse. The administrative record is only slightly more illuminating. For example, the ALJ noted that Plaintiff would, in the absence of substance abuse, have a "moderate restriction" in the activities of daily living. (Docket 9 at 22.) Further, the ALJ found that he had "moderate difficulties" with "concentration, persistence, or pace" and "social functioning." (*Id.*) Although the record below is far from conclusive, given these findings and the fact that Defendant did not brief this issue, the Court is inclined to give Plaintiff the benefit of the doubt that there is at least a "reasonable possibility" that Plaintiff could meet this prong of the test. *Borders*, 777 F.2d at 955.

Second, the newly offered evidence purports to meet the prong of the test which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(C). The recently-acquired IQ tests were administered in 1984 (when the Plaintiff was 9 years old),[4] resulting in a score of 65, and 1987 (when the Plaintiff was 12 years old), resulting in score of 68. According to the regulations pertaining to *children's* mental retardation, these tests are too old to be considered accurate:

> IQ test results must also be sufficiently current for accurate assessment under [20 C.F.R. pt. 404, subpt. P, app. 1, §] 112.05. Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages

---

[4] The Court notes that the narrative report accompanying the 1984 IQ score states that "the chances are 95 out of 100 that the range of scores between 79 and 81 reflect his ability range." *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(D)(6)(a) (stating that "the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.").

> 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above. IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above.

20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00(D)(10). The application of this provision to the *adult* mental retardation description is unclear.[5] However, given that there is no express prohibition on the consideration of these tests, the Court cannot hold that they would be considered invalid as a matter of law. Again, there is at least a reasonable possibility that Plaintiff could meet this prong of the test. *Borders*, 777 F.2d at 955.

For the final prong of the test, Plaintiff would need to establish a "physical or mental impairment imposing additional and significant work-related limitation or function." § 12.05(C). What constitutes a "significant" impairment is not defined in the Act's regulations; however, the Fourth Circuit has noted that "the significant limitation under section 12.05(C) need not be disabling in and of itself." *Branham,* 775 F.2d at 1273. The ALJ determined that Plaintiff has several "severe impairments": alcohol dependence, antisocial personality disorder, and alcohol-induced mood disorder. (Docket 9 at 20.) Although the ALJ found that these impairments were non-disabling because, in the absence of substance use, they would not meet or medically equal the impairments

---

[5] At least one court has held that, as there is no currency requirement in § 12.05, IQ tests that would be outdated under the children's regulations are properly considered for the purposes of § 12.05(C). *See Williams v. Astrue*, 4:07-cv-1649, 2009 WL 214590, at *8 (E.D. Mo. Jan. 28, 2009) (ALJ erred in failing to consider an adult's IQ score from when she was 12 years old "[b]ecause the listing in § 12.05(C) contains no currency requirement"). Other courts have upheld an ALJ's decision not to consider such tests. *See Lewis v. Astrue*, No. 08-0583-CB-M, 2009 WL 1904319, at *3 (S.D. Ala. July 1, 2009) ("Lewis was only fifteen when she was first tested, so under the regulations, those results would no longer be considered current . . . The Court finds that the ALJ's decision not to rely on Lewis's IQ results from twenty years earlier was proper."); *see also Williams v. Apfel*, No. 97-C-5551, 1998 WL 852872, at *10 n.4 (N.D. Ill. Dec. 4, 1998) ("The validity of IQ-test scores that, under the regulations, become questionable after two years certainly raises questions about Williams' ability to now rely on those scores to establish mental retardation. Accordingly, these scores cannot serve as an accurate depiction of Williams' current level of intellectual functioning.").

listed in 20 C.F.R. pt. 404, subpt. P, app. 1, he noted that even in the absence of substance use, "the claimant would continue to have a severe impairment or combination of impairments." (Docket 9 at 21.) For the purposes of 12.05(C), a "severe impairment," by definition, imposes a significant work-related limitation of function. *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A), *with* 20 C.F.R. § 416.920(c); *see also Luckey v. U.S. Dept. of Health & Human Serv.*, 890 F.2d 666, 669 (4th Cir. 1989) (per curiam). Therefore, it seems that there is a reasonable possibility that Plaintiff could meet this prong of the test. *Borders*, 777 F.2d at 955.

Although the impact that this new evidence will have on Plaintiff's disability determination is uncertain, as described above, there is at least a possibility that the Secretary's decision "might reasonably have been different" had this evidence been before her. *Borders*, 777 F.2d at 955.

*C. Good Cause*

Under the third prong of the *Borders* test, Plaintiff has to show "good cause" for failing to submit the evidence to the commissioner. *Borders*, 777 F.2d at 955. Plaintiff argues that the records were unavailable at the time of the administrative proceeding because his previous school had closed and the records were stored at an unknown location until Dec. 27, 2010. The Court accepts the representations of counsel that the location of the evidence was unknown at the time of the administrative hearing and finds that there is sufficient good cause for the failure to submit the additional evidence when the case was before the Commissioner.

*D. General Showing*

The final prong of the *Borders* test requires that the Plaintiff make at least a "general showing" of the new evidence. *Borders*, 777 F.2d at 955. Any deficiency in this area was corrected when the Plaintiff attached the educational records in question to its reply. (Docket 16-1.) As

Plaintiff has provided the Court with a copy of these records, this element of the *Borders* test is satisfied.

## *IV. CONCLUSIONS*

As evidenced by Plaintiff's satisfaction of the four prerequisites identified in *Borders,* Plaintiff has made the appropriate "showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Accordingly, Plaintiff's Motion to Remand [Docket 14] is **GRANTED**. A separate Judgment Order will be entered this day implementing the rulings contained herein. The Court hereby **REMANDS** this case to the Commissioner of Social Security for further proceedings and **ORDERS** the Commissioner to consider Plaintiff's additional evidence.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 31, 2011

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE